AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California



FILED
JUN 0 8 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| | ) | |
| Saybyn Borges | ) | 2:18-MJ-111-EFB |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 21, 2018 through June 7, 2018__ in the county of __Placer and San Joaquin__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Count One: 21 U.S.C. § 841(a)(1) | Distribution of 40 Grams or More of a Mixture and Substance Containing a Detectable Amount of Fentanyl, a Schedule II Controlled Substance (May 21, 2018, Placer County) |
| Count Two: 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Fentanyl, a Schedule II Controlled Substance (June 7, 2018, San Joaquin County) |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Aaron Kacalek, DEA TFO
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6-8-2018

_____
*Judge's signature*

City and state: Sacramento, CA

Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF DEA TASK FORCE OFFICER AARON KACALEK

I, Aaron Kacalek, being duly sworn, hereby depose and state:

## Purpose

1. This Affidavit is made in support of criminal complaint and arrest warrant for:

    Saybyn BORGES (Counts 1-2)

    **COUNT ONE:** Distribution of 40 Grams or More of a Mixture and Substance Containing a Detectable Amount of Fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) (May 21, 2018).

    **COUNT TWO:** Possession with Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) (June 7, 2018).

## Agent Background

2. I am a Task Force Officer (a "TFO") with the Drug Enforcement Administration ("DEA") Task Force operating out of the Sacramento District Office, and have been since September 2014. As a TFO on the DEA Task Force, I have been sworn as a deputized agent with the DEA. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3. The DEA Task Force, which is federally funded, is a collaborative group of officers and agents from the DEA and state and local law enforcement agencies such as the California Highway Patrol (the "CHP"), Sacramento Police Department, California Department of Corrections and Rehabilitation, El Dorado County Sheriff Department, and El Dorado County District Attorney's Office. The goal of the DEA Task Force is to investigate and disrupt illicit drug trafficking in specified geographical areas by immobilizing the highest levels of targeted violators and trafficking organizations.

4. As a TFO on the DEA Task Force, I have been assigned to assist in multiple investigations involving high-level drug traffickers. In March 2015, I was assigned to the Tactical Diversion Squad within the DEA. This squad combines resources of federal, state, and local law enforcement agencies in an innovative effort to investigate, disrupt, and dismantle activities of individuals and organizations suspected of violating federal narcotics-related criminal laws and federal, state, and local statutes pertaining to the diversion of licit pharmaceutical controlled substances and listed chemicals. I am also responsible for searches of targets on probation or parole who are associated with drug

1

trafficking; authoring and disseminating current information on drug trafficking patterns; monitoring and assessing drug activity; and providing training to CHP officers regarding drug trafficking.

5. I am also a Peace Officer with the California Highway Patrol and have held this position since June 1999. Prior to my current assignment as a TFO, I have held prior assignments which have included ~~such as~~ CHP patrol duties in the Sacramento and Los Angeles areas.

6. I have received over 1,200 hours of law-enforcement training in the California Highway Patrol ACHP academy (the "CHP Academy"). Subsequent to my academy training, I have received over 400 hours of law-enforcement training from multiple Federal, State, and allied local law enforcement agencies in regard to a wide variety of topics, including, but not limited to, ethics, criminal investigations, annual legal updates, current law enforcement trends, perishable skills, law-enforcement techniques, gang investigations, computer crimes, and narcotic investigations.

7. In October of 2003, I attended and successfully completed an 80-hour Drug Recognition Expert program at the CHP Academy. In March 2007, I attended the 40-hour CHP criminal apprehension program. This class, taught by investigators, included training in investigative techniques, street gangs, firearm related offenses and narcotics enforcement.

8. Between 1999 and 2014, I conducted no fewer than 500 investigations of unlawful activity concerning controlled substances, vehicle theft, homicide, identity theft, fraud, weapon crimes, gang crimes, and various assaults. During these investigations, I received information from offenders regarding their criminal methodology; I also received instruction from and observed the investigative techniques used by experienced law enforcement officers.

9. I am familiar with the manner in which illegal drugs are imported, manufactured, and distributed; methods of payment for such drugs; efforts of persons involved in such activities to avoid detection by law enforcement; and methods used to finance drug transactions and launder drug proceeds.

10. I am familiar with the manner in which prescription pharmaceuticals are diverted for illicit use. I am also familiar with the means through which persons counterfeit prescription pharmaceuticals and profit therefrom.

11. I have been recognized in open court as an expert witness in the use, sales, and transportation of controlled substances.

12. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2

13. The facts and information set forth in this Affidavit are true based upon my personal knowledge and observations, observations of other law enforcement personnel, observations of cooperating individuals as related to me, my review of investigative reports, notes, transcripts, review of recorded calls, and discussions with other federal, state and local law enforcement officials. Because this affidavit is submitted for the limited purpose of supporting a criminal complaint and securing the requested arrest warrant, I have not included the details of every aspect of the investigation. I have set forth only the facts that I believe are necessary to establish a foundation for an order authorizing the arrest of the individual named herein, a criminal complaint charging the individual named herein.

## Statement of Probable Cause

### *Background of Investigation*

14. The Drug Enforcement Administration ("DEA") Sacramento District Office ("SDO") and the Placer County SIU (the Investigating Agencies), have been investigating the drug trafficking activities of Saybyn BORGES in Placer, Sacramento, and San Joaquin Counties,f California. During this investigation, through the use of a Confidential Source (CS), the Investigating Agencies were able to identify that BORGES distributed controlled substances in the form of counterfeit pharmaceutical tablets which contained fentanyl.

15. Saybyn Oniel BORGES, is an adult male born on November 10, 1990. BORGES's identifiers include Nevada driver's license number xxxxxx8489, Nevada state identification number 04294582, Social Security Numbers xxx-xx-0792 and xxx-xx-0793.[1] Based on a check of the NCIC,[2] BORGES's criminal record includes, but is not necessarily limited to, the following conviction:

    - State of Nevada: 2014 misdemeanor conviction for violation of condition of sex offender lifetime supervision. *Note*: BORGES' criminal history indicates he was arrested for felony charges of sexual assault and coercion; however, at this time we are not able to identify the disposition of these cases based on the NCIC report.

### *May 21, 2018, Controlled Purchase of Fentanyl Tablets from BORGES*

16. Between April 24, 2018, and May 21, 2018, the CS was in contact with Saybyn BORGES. The calls between the CS and BORGES were used to negotiate and organize the purchase of Oxycodone tablets from BORGES. The calls between the CS and BORGES were recorded.

---

[1] To protect BORGES's personal identification in the event of eventual prosecution and disclosures required by discovery obligations, a redacted driver's license number and Social Security Number is used in this Affidavit. The complete driver's license number and Social Security Number are retained in the DEA investigative file for this case.

[2] NCIC records can be difficult to interpret; the information provided in this affidavit is the affiant's best understanding of the records provided.

17. The CS indicated he/she drove to a public parking lot in, Auburn CA (Placer County). The CS advised he/she (CS) had been parked for about five minutes when the CS observed BORGES exit a black vehicle. BORGES then walked over and entered the passenger side door of the CS vehicle.

18. Once inside the vehicle, BORGES provided the CS with a glass jar with a white plastic lid containing blue tablets. The CS provided BORGES with the $10,000.00 in Official Advanced Funds (OAF). The CS asked BORGES if the pills were real or pressed. BORGES stated the pills were real. BORGES also told the CS if the CS smelled the tablets the tablets would smell like "vinegar." BORGES told the CS it is a way to know if the pills are real or not.

19. The CS indicated he/she (CS) opened the lid to the glass jar and smelled the pills. The CS indicated the pills smelled like ethanol. The CS stated BORGES exited the CS vehicle and returned to the black vehicle.

20. During this meeting, the CS was wearing a concealed/recorded allowing for an audio recording of the conversation between the CS and BORGES. This meeting was also kept under observation by surveillance agents. The CS as well as agents from the Investigating Agencies were able to positively identify BORGES during the surveillance of the controlled purchase.

21. The CS and CS's vehicle was searched before and after for contraband and weapons with negative results.

22. Hours after the completion of the buy/walk, I received a call from the Auburn Police department indicating the CS had overdosed on a controlled substance. Later that same day I interviewed the CS and s/he immediately admitted to taking three of the oxycodone tablets during the controlled buy from BORGES and ingesting three of them.

23. During the buy/walk on May 21, 2018, the evidence generated (audio recordings, visual surveillance, and collection of the controlled substance) corroborated the CS's information regarding BORGES. For these reasons, I still believe the CS is reliable.

The suspected tablets were sent to the DEA Western Regional Laboratory (WRL) for further analysis. The results from the WRL indicated the tablets had a net weight of 52.628 grams. The WRL confirmed the tablets contained Fentanyl.

*June 7, 2018, Controlled Purchase of A controlled substance from BORGES*

24. Between May 22, 2018, and June 7, 2018; at the direction of law enforcement, the CS exchanged recorded telephone calls and text messages[3] with BORGES during which the

---

[3] All of the text messages sent to BORGES were actually sent by a DEA agent posing as the CS.

4

CS negotiated the purchase of approximately 7,000 Oxycodone tablets from BORGES for $126,000.

25. On June 7, 2018, BORGES arrived at the pre-determined meeting location, which was a public parking lot in Stockton, California (San Joaquin County) in a Gold Nissan Altima bearing Nevada license plate 579D64 and met with the CS and two undercover police officers (UC-1 and UC-2). BORGES had a brown paper bag next to him in the vehicle from which he extracted a handful of small blue tablets to show to the CS and UC-1.

26. Shortly after the CS and UC-1 saw the blue tablets, officers initiated an arrest of BORGES. BORGES then used his vehicle to break containment by ramming his vehicle into an unmarked law enforcement vehicle. When BORGES rammed the law enforcement vehicle, the vehicle was pushed into a law enforcement officer, causing injury to the officer as BORGES fled the scene. Officers pursued BORGES and observed him throwing items out of the vehicle. After a short pursuit, BORGES was taken into custody.

27. Following the pursuit, agents located over 100 tablets stamped with an M on one side and 30 on the other (a marking for Oxycodone tablets) in BORGES' vehicle. In addition, officers walked both sides of the road along which the pursuit occurred and collected hundreds of small blue tablets which appear identical to the tablets located the vehicle. These tablets appear identical to the tablets purchased from BORGES on May 21, 2018. These tablets were sent to the WRL for analysis, and preliminary results indicate they Fentanyl.

[*Continued on the Next Page.*]

5

## Conclusion

28. Based on the above information, I believe that BORGES has committed violations of 21 U.S.C. 841(a)(1). I therefore request that a complaint and arrest warrant be issued for Saybyn BORGES based on the aforementioned facts.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

AARON KACALEK
DEA Task Force Officer

Sworn and Subscribed to me
on ___6--8___ 2018

Hon. EDMUND F. BRENNAN
United States Magistrate Judge

Approved as to form:

Cameron L. Desmond
Assistant United States Attorney

6